## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

   *Plaintiff,*

 vs.

KIM HOUSHOLDER,

   *Defendant.*

Case No. 14-10120-EFM

### MEMORANDUM AND ORDER

This matter comes before the Court on Kim Todd Housholder's Motion to Suppress Silencer (Doc. 9).  Housholder considers the search of his home unlawful.  He challenges the adequacy of the warrant affidavit.  Alternatively, he denies that plain view, inevitable discovery, or the *Leon* good faith exception excuse the search.  Because the Court finds the warrant affidavit adequate and the plain view exception applicable, the Court denies Housholder's motion to suppress.

### I.  Factual and Procedural Background[1]

On April 4, 2014, dispatch contacted Undersheriff Jessica McDaniel to respond to a woman who claimed that men she knew were trying to kill her.  McDaniel traveled to the woman's location, a Greeley County convenience store.  A man approached McDaniel when she

---

[1] The Court takes the following facts from the Affidavit for Search Warrant (Doc. 9-2) unless otherwise noted.

arrived.  The man identified himself as Christopher Fox, the traveling companion of the woman responsible for the 911 call, Diane Druda.  Fox stated that Druda "had gone crazy" and he was unsure what was happening.  McDaniel asked Fox to remain outside with another responding officer.

McDaniel entered the convenience store to speak with Druda.  Druda identified herself to McDaniel and claimed that her life was in danger.  Druda told McDaniel that she and Fox were recently at Todd Housholder's home.  McDaniel observed that Druda "kept looking around and acting paranoid."  To calm Druda, McDaniel offered to interview her at a safer location, the sheriff's office.  Druda accepted.

At the sheriff's office, Druda discussed visiting Housholder's home.  Druda disclosed that, while recently at Housholder's home, "Todd [Housholder] had a small baggie of meth and put some in a pipe."  Druda, Fox, and Housholder smoked the meth.  But Druda felt like "they may have put something else in the meth because she wasn't feeling right."  After smoking, Druda became scared.  Druda told Fox they needed to leave Housholder's home.  Druda and Fox began to argue on the drive into town.  When they stopped at a convenience store, Druda contacted the sheriff's office.

During the interview, Druda also elaborated her concern for her safety.  Druda explained that she was afraid that her ex-boyfriend, Fox, and Housholder "might be serial killers" plotting her murder.  Druda stated that her ex-boyfriend, Fox, and Housholder have "fake cops and other people working with [them]."  Druda indicated that "they" control her phone and prevent her from reaching the person she actually intends to call.

After receiving these statements, McDaniel returned the conversation to Druda's drug use.  Druda admitted that she had smoked meth before.  But she denied that meth had ever

caused her to feel the way she did after smoking at Housholder's home.  McDaniel asked Druda if she or Fox had any meth or drugs with them.  After answering that "they" may have placed drugs in her bag to frame her, Druda permitted McDaniel to search her bag.  McDaniel found no drugs or related contraband.  Druda also consented to a urinalysis test to determine whether she consumed any other drug with the meth.  Druda tested positive for meth and negative for marijuana or heroin.

While McDaniel interviewed Druda, Fox willingly accompanied Sheriff Mark Rine, another responding officer, to the sheriff's office.  Rine searched Fox and his vehicle.  Rine found no drugs, paraphernalia, or firearms.  After the search, Rine interviewed Fox about Druda's statements.  Fox told Rine that he and Druda were traveling to Oklahoma, but had stopped to visit Housholder's home.  There, "a pipe with meth or crank was passed around and [Fox] took a puff off of it."  Fox then left Housholder's home to get some food.  When Fox returned, Druda was alone in a spare bedroom "acting strange."  Fox and Druda left Housholder's home and traveled to the convenience store where Fox eventually encountered the sheriffs.  Fox also volunteered that Druda had some mental health issues and previously had been hospitalized.

Using the above information from Druda and Fox, McDaniel obtained a search warrant for Housholder's home.  The warrant found probable cause to believe that Housholder's home contained evidence of methamphetamine and drug paraphernalia possession.  Among other items, the warrant particularly described "weapons" as "evidence, contraband, fruits, and/or instrumentalities" of the alleged drug possession crimes.

Officers, including Rine, executed the warrant the following evening.  Officers ultimately found and seized several items of drug paraphernalia and a Ruger SR-22 rifle.  Rine immediately

noticed the rifle after entering the east door to the home.  Rine saw the weapon propped against the west wall of the living room.  After more closely inspecting the rifle, Rine determined that a homemade silencer was attached to the rifle's barrel.   Rine testified that he made this determination based on his military training with silencers; silencer identification instruction from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"); review of bulletins from intelligence associations describing items that can be adapted to make silencers; and his observation that the attachment lacked the customary slits or holes that would allow it to function as a flash suppressor or muzzle brake.   Knowing that it is unlawful both to possess an unregistered silencer and for a user of a controlled substance to possess a firearm, Rine seized the weapon.   Subsequently, Rine submitted the suspected silencer to the ATF for evaluation. The ATF's Firearms Technology Branch confirmed that the attachment reduced the sound of a test weapon similar to the seized rifle from 154.52 decibels to 144.82 decibels.

In July 2014, a federal grand jury returned a one-count indictment charging Housholder with unlawful possession of a firearm silencer.[2]   Housholder filed a motion to suppress the silencer and other contraband found at his home.  The Court held a hearing in November 2014, and the matter is now before this Court.

### III.   Analysis

Housholder contends that the Fourth Amendment obligates this Court to suppress evidence seized from his home because the warrant affidavit lacked probable cause to authorize a

---

[2] *See* 26 U.S.C. §§ 5861(d), 5845(a)(7), 5871.  The Court notes that the Indictment (Doc. 1) incorrectly cites to §5845(a)(1) instead of §5845(a)(7).  However, because no challenge to this error is raised to the Court, the Court will not further concern itself with the error.

warrant to search his home and, alternatively, to search his home specifically for weapons.[3]   The Government responds that probable cause supported the entire search and, even if the warrant affidavit provided no probable cause, the *Leon* good faith exception to the exclusionary rule applies.   Additionally, the Government argues that, even absent probable cause to search Housholder's home specifically for weapons, plain view and inevitable discovery excuse the search.   Housholder disputes that any exception saves the search.

### A. The Warrant Affidavit Provided Probable Cause to Search Housholder's Home

Probable cause must support the warrant authorizing the Government's search of Housholder's residence.[4]   Indeed, the "chief evil" against which the Fourth Amendment operates is "physical entry of the home."[5]   Thus, a reviewing court is obligated to ensure that the judge who approved the warrant "had a 'substantial basis for . . . conclud[ing]' that probable cause existed."[6]   Simplified, probable cause requires "only the probability, and not a prima facie showing, of criminal activity."[7]   Probable cause exists when the totality of the facts and circumstances presented in the warrant affidavit would allow "'a man of reasonable caution' to

---

[3] Housholder also argues that this prosecution violates his due process rights.  Specifically, Housholder contends that Kansas's Second Amendment Protection Act—which putatively exempts firearm accessories made and kept in Kansas from being subject to federal gun control laws—made it impossible for him to appreciate the illegality of possessing the silencer.  The Court disallowed this argument as being untimely filed.  But even ignoring Housholder's delinquency, the Court is skeptical that the belated argument could gain traction in defense of this federal crime.

[4] *See* U.S. Const. amend. IV (providing that "no warrants shall issue but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.").

[5] *United States v. U.S. Dist. Court*, 407 U.S. 297, 313 (1972).

[6] *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983) (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)).

[7] *Id.* at 235 (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)).

believe that evidence of a crime will be found at the place to be searched."[8]  It thus "requires a nexus between suspected criminal activity and the place to be searched."[9]  But hard evidence or personal knowledge of illegal activity is not required to connect an individual's suspected unlawful activity with his home.[10]  Additionally, the issuing judge is permitted to draw reasonable inferences from facts presented in the warrant affidavit.[11]  A judge's decision to issue a warrant is entitled to great deference.[12]

After examining the warrant affidavit, the Court determines that ample evidence supports the probability that Housholder possessed evidence of drug offenses in his home.  Both Druda and Fox, two identified sources, independently reported using methamphetamine with Housholder at his home only hours prior to the interview.  Druda specifically stated that Housholder provided both the methamphetamine, from a small baggie, and the pipe—that Fox identified as being passed around.  Urinalysis confirmed Druda's recent ingestion of methamphetamine.  But, after searching Druda, her belongings, Fox, and his vehicle, officers discovered no evidence of any drugs or drug paraphernalia.  A man of reasonable caution considering these facts would accept the probability that evidence of a drug offense would be found at Housholder's home.  As such, a substantial basis supports the state court's decision that probable cause existed to authorize a warrant to search Housholder's home for evidence of drug offenses.

---

[8] *United States v. Nolan*, 199 F.3d 1180, 1183 (10th Cir. 1999) (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983) (plurality)).

[9] *United States v. Corral-Corral*, 899 F.2d 927, 937 (10th Cir. 1990).

[10] *United States v. Biglow*, 562 F.3d 1272, 1279 (10th Cir. 2009).

[11] *United States v. Tisdale*, 248 F.3d 964, 971 (10th Cir. 2001) (quotation omitted).

[12] *United States v. Gonzales*, 399 F.3d 1225, 1228 (10th Cir. 2005).

Housholder, however, disputes the state court's probable cause finding for two reasons. First, Housholder contends that the warrant affidavit omits certain facts. Housholder criticizes the warrant affidavit as providing inadequate details about Druda and Fox's relationship to him. Also, Housholder argues that the warrant affidavit contains no allegation that Druda or Fox knew where he lived, that he continued to possess methamphetamine, that officers would find methamphetamine at his home, or that the methamphetamine Druda and Fox reported consuming at his home belonged to him. Housholder provides no explanation or authority demonstrating why the omissions he identified undermine the state court's probable cause determination.

The Court considers these omissions immaterial under the totality of the circumstances. The Court reiterates that probable cause exists where the totality of the circumstances demonstrate to a reasonable mind the probability of criminal activity.[13] Where, as here, the sources are known and independently offer corroborating personal observations of their experience with defendant, it is not necessary that the court exactly categorize the informant's relationship to the defendant in order to conclude that a relationship providing the basis for the informant's information exists.[14] Even so, the warrant affidavit provides adequate information to deduce the facts omitted. The warrant affidavit states that Fox and Druda stopped at Housholder's home while traveling together to Oklahoma. When Housholder arrived, they all entered his home and smoked methamphetamine that neither Druda nor Fox provided. Hours later, officers interviewed Fox and Druda. Officers discovered no evidence of contraband with

---

[13] *Nolan*, 199 F.3d at 1183 (quoting *Brown*, 460 at 742).

[14] *See United States v. Brinlee*, 146 Fed. App'x 235, 238–39 (10th Cir. 2005) (concluding that information about informant's relationship to defendant omitted from affidavit was immaterial); *United States v. Jenkins*, 313 F.3d 549, 554–55 (10th Cir. 2002) (assessing reliability of tip based on informant's report of personal observation of defendant and participation in defendant's unlawful activity).

them.  These facts permit reasonable inferences that Fox and Druda knew where Housholder lived, that Fox and Druda had a preexisting relationship with Housholder, and that Housholder's home would contain evidence of the unlawful activity performed there earlier that day. Accordingly, Housholder identifies no omissions from the warrant affidavit that weaken the substantial basis for the state court's probable cause determination.

Second, Housholder contests the reliability of Druda's statements included in the warrant affidavit.  An informant's reliability is one important factor in determining, under the totality of the circumstances, whether probable cause supports a search.[15]  Housholder correctly indicates that, here, the state court's probable cause determination rested heavily on the information Druda provided.  But he incorrectly concludes that Druda's statements lacked sufficient reliability to support the state court's decision.  The warrant affidavit disclosed that officers obtained Druda's statements while she was under the influence of methamphetamine and experiencing paranoia. The affidavit also divulged that Druda has a history of mental illness.  More importantly, however, the affidavit presented corroborating evidence.  The urinalysis results confirmed that Druda recently smoked methamphetamine, as reported.  Fox also reported events consistent with Druda's statements.  Correctly, the Government indicates that "[C]onsistency between the reports of two independent informants helps to validate both accounts."[16]  Fox confirmed that he and Druda visited Housholder's home and smoked a pipe containing methamphetamine provided to them.  Though Fox does not indicate, like Druda, that Housholder specifically provided the methamphetamine or pipe, his account authenticates Druda's related statements.  And when "an

---

[15] *Gates*, 462 U.S. at 238.

[16] *United States v. Le*, 173 F.3d 1258, 1266 (10th Cir. 1999) (quoting *United States v. Schaefer*, 87 F.3d 562, 566 (1st Cir. 1996)).

informant is shown to be right about some things, [s]he is probably right about other facts that [s]he has alleged, including the claim that the object of the tip is engaged in criminal activity."[17] That Druda and Fox both provided information against their penal interest to the officers also favors the reliability of their statements.[18]  The warrant affidavit thus establishes adequate facts to justify the state court's reliance on Druda's statements concerning drug use in Housholder's home.  Having dismissed Housholder's objections to the warrant affidavit, the Court concludes that the state court properly found probable cause to search Housholder's home for evidence of drug possession crimes.[19]

### B. Plain View Justified the Seizure of the Silencer

Housholder next argues that even if probable cause supported the search of his home for evidence of drug crimes, the affidavit offered no facts justifying the warrant's authorization to search his home for weapons.  The Government responds that it "was not unreasonable" for the warrant to include weapons.  But if unreasonable, the Government argues that Sheriff Rine discovered the silencer in plain view when executing the warrant to search his home.

The plain view doctrine is a valid exception to the "general rule that warrantless searches are presumptively unreasonable."[20]  The plain view doctrine permits the seizure of incriminating

---

[17] *Alabama v. White*, 496 U.S. 325, 331 (1990).

[18] *Le*, 173 F.3d at 1266.

[19] Housholder also challenges the Government's argument that even if the warrant lacked probable cause, the good faith exception to the exclusionary rule nevertheless excuses the search.  *See United States v. Leon*, 468 U.S. 897 (1984) (concluding that evidence obtained under a subsequently invalidated search warrant is admissible if the officers acted in reasonable reliance the warrant's validity).  Absent a valid warrant, the *Leon* exception would probably save the search of Housholder's home.  However, finding a substantial basis to support the state court's probable cause determination, the Court need not decide *Leon*'s applicability.

[20] *Horton v. California*, 496 U.S. 128, 133 (1990).

objects that an officer inadvertently discovers.[21]   For his seizure of the silencer to be lawful under the plain view doctrine the Court must find that (1) Rine was lawfully in a position from which he could clearly observe the silencer, (2) the silencer's incriminating character was immediately apparent, and (3) Rine had a lawful right of access to the silencer.[22]   Having decided that officers entered Housholder's home pursuant to a valid warrant, the Court finds that Rine was lawfully positioned in the home to observe the silencer conspicuously propped against Housholder's living room wall.   Neither party disputes that, once in the home, Rine had a lawful right of access to the silencer.   Housholder thus objects that plain view justifies the seizure of the silencer because the silencer did not immediately present itself as incriminating.   Housholder argues that "not only was this object not immediately apparent as contraband, the contraband determination here required expert testing" by the ATF Firearms Technology Branch after the seizure.

The court disagrees.   An object's incriminating character is immediately apparent if the discovering officer has probable cause to believe the object is contraband or evidence of a crime.[23]   Under the circumstances, Rine reasonably believed the silencer was evidence of a crime.  Federal law makes it unlawful to possess an unregistered silencer.[24]   Rine observed that the rifle barrel's attachment lacked slits or holes that would allow it to function as a flash suppressor or muzzle brake.   Having eliminated these alternative possibilities, Rine concluded that the attachment most probably was a silencer.   And because the item appeared to be

---

[21] *Coolidge v. New Hampshire*, 403 U.S. 443, 466 (1971).

[22] *See Horton*, 496 U.S. at 136–37 (1990); *United States v. Thomas*, 372 F.3d 1173, 1178 (10th Cir. 2004).

[23] *Thomas*, 372 F.3d at 1178.

[24] *See* 26 U.S.C. §§ 5861(d), 5845(a)(7), 5871.

-10-

homemade, Rine reasonably believed that Housholder lacked registration for the attachment. Rine reached these conclusions using his extensive weapons training and experience. Knowing that the law prohibited Housholder from possessing an item of the character he identified, Rine seized the silencer.[25]   That Rine subsequently submitted the silencer for evaluation does not undermine the adequacy of his original determination. Housholder misinterprets the legal requirement that an item's incriminating character be immediately apparent. Housholder mistakenly implies that officers must have *confirmed* that the item functioned as a silencer before seizing it. But the law requires only that Rine have had probable cause to believe that the item was unregistered and functioned as a silencer. Because the circumstances apparent to Rine would "warrant a man of reasonable caution in the belief"[26] that the silencer was evidence of a crime, plain view justified the seizure of the silencer.[27]

---

[25] The Government also argues that Rine seized the silencer knowing that federal law prohibits an individual who is a user of a controlled substance to possess a firearm. *See* 18 U.S.C. § 922(g)(3). Rine believed that the residue-covered drug paraphernalia discovered at Housholder's home qualified Housholder as an unlawful user of a controlled substance. Thus, Rine seized the silencer as incriminating evidence both because he thought it unlawful to possess generally (as an unregistered silencer) and unlawfully possessed specifically by Housholder (as a user of a controlled substance). Though probable cause likely supports the latter, the Court limits its analysis to concluding that probable cause certainly supports the former. *See Le*, 173 F.3d at 1270–71 (10th Cir. 1999) (upholding seizure of guns found in plain view during execution of warrant for drugs where officers knew federal law prohibited drug user from possessing firearm).

[26] *Brown*, 460 U.S. at 742 (quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925)).

[27] The Government also justifies the silencer's seizure based on the inevitable discovery doctrine. *See United States v. Christy*, 739 F.3d 534, 540 (10th Cir. 2014) (explaining that, despite the exclusionary rule, evidence is admissible if it would have been otherwise discovered without a Fourth Amendment violation). Because the Court finds that the plain view doctrine authorized Rine to seize the unregistered silencer, the Court need not address inevitable discovery.

**IT IS THEREFORE ORDERED** that the Motion to Suppress (Doc. 9) is hereby **DENIED**.

**IT IS SO ORDERED**.

Dated this 25th day of November, 2014.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE